18626

The PIRATES' COVE, INC., Logan Drake, Sr., Carolina Management Co., Inc., Harold Flinsch, Jr., Army-Navy Club, Inc., and David G. S. Taylor, Respondents, v. J. P. STROM, as Chief of the South Carolina Law Enforcement Division, and The South Carolina Tax Commission, Appellants.

(153 S. E. (2d) 900)

*Messrs. Daniel R. McLeod, Attorney General,* and *C. T. Goolsby, Jr.,* and *Robert W. Brown, Assistant Attorneys General,* of Columbia, *For appellants,*

272

*Messrs. Frank L. Taylor, Kermit S. King* and *David W. Robinson, II* of Columbia, *for Intervenor-Respondents,* and *J. Reese Daniel, A. McConnell Faucette* and *David A. Fedor,* of Columbia, *for respondents,*

March 29, 1967.

LEWIS, Justice.

The issue here is whether one may lawfully sell legally acquired alcoholic liquors in South Carolina, or have the same in possession for sale, without a license from the State to do so.

The plaintiff, Pirates' Cove, is a South Carolina Corporation, having been issued a charter by the State in February 1966, "to own and/or operate various types of clubs or restaurants or places of amusement or entertainment." Mr. D. M. Winter, Jr., of Columbia, South Carolina, owns all of the corporate stock. Following its incorporation, a club was formed and operated by the corporation in Columbia under the name of Pirates' Cove with a stated maximum membership of 2,000, of which approximately 1500 memberships have been sold, the first 1,000 at $10.00 each and the remainder at $25.00 per member. Membership is obtained by application and is determined upon the basis of good character and ability to meet one's financial obligations to the club. The club provides professional entertainment and music for dancing for the members and their guests, with a member limited to a maximum of three guests when "Name" entertainers are performing at the club. At other times there is no particular limit on the number of guests per member. A minimum charge, varying with the type entertainment provided, is required of each person attending the club.

While the club is not licensed by the State to sell alcoholic liquors it operates a bar at which alcoholic liquors are kept for sale and sold by the drink to any of its members or guests admitted to the premises. Regular meals are not sold but hors d' oeuvres are available. Soft drinks are also sold. The liquor sold by the club, and involved in this action, was purchased by it from licensed retail liquor dealers and all South Carolina liquor taxes had been paid thereon.

On September 6, 1966, State law enforcement officers raided the plaintiff's clubroom confiscated 47 bottles of

alcoholic liquors, and subsequently preferred criminal charges against the bartender for violation of the State's liquor laws with respect to the possession and sale of alcoholic liquors, specifically Sections 4-91, 4-95, and 4-96 of the 1962 Code of Laws.

Thereafter this action was brought by the plaintiff against the defendants, J. P. Strom, Chief of the South Carolina Law Enforcement Division, and the South Carolina Tax Commission, upon which the duty is placed to enforce the laws relating to the sale of alcoholic beverages, seeking to restrain the enforcement of the foregoing statutes against plaintiff upon the grounds that they are inapplicable to its activities with respect to the possession and sale of alcoholic liquors and, even if applicable, are unconstitutional and void. After a hearing, the lower court sustained the contentions of the plaintiff both as to the inapplicability of the foregoing statutes to plaintiff's liquor operations and their unconstitutionality. The defendants have appealed from the foregoing rulings of the lower court.

After this action was instituted, Carolina Management Company, Inc., Harold Flinsch, Jr., Army-Navy Club, Inc., and David G. S. Taylor were permitted to intervene as plaintiffs upon allegations that their operations were similar to those of the plaintiff Pirates' Cove, and with the stipulation that the decision herein would apply with equal force and effect to them.

The parties have devoted their briefs to a discussion of the applicablility and validity of Sections 4-91, 4-95 and 4-96 of the 1962 Code of Laws. However, since plaintiff's questioned activities clearly fall within the prohibitions of Section 4-91, we need not consider the meaning and effect of Sections 4-95 and 4-96 or the questions raised as to the constitutionality of the latter sections.

Section 4-91 is as follows:

"It shall be unlawful for any person to manufacture, store, keep, receive, have in possession, transport, ship, buy,

sell, barter, exchange or deliver any alcoholic liquors, except liquors acquired in a legal manner, and except in accordance with the provisions of this chapter, or to accept, receive or have in possession any alcoholic liquors for unlawful use under the provisions of this chapter."

The provisions of the foregoing statute, with respect to sales, makes it unlawful for *any person* to *sell* alcoholic liquors in this State except (1) "liquors acquired in a legal manner" and (2) "in accordance with the provisions of this chapter." This section is a part of Chapter 1 of the Alcoholic Beverage Control Act. Section 4-31 of that chapter provides for the licensing by the State of manufacturers, wholesalers, and retailers of alcoholic liquors; and, unless a person is so licensed by the State, he cannot sell alcoholic liquors in accordance with the provisions of Chapter 1, to which reference is made in Section 4-91. Compliance with the first requirement of Section 4-91, lawful acquisition, is not enough, the second exception, possession of a license from the State, must also be met in order to constitute a lawful sale.

The last portion of Section 4-91 makes it "unlawful for any person * * * to have in possession any alcoholic liquors for unlawful use under the provisions of this chapter." As applied to liquors lawfully acquired, the foregoing makes it unlawful for one to have in his possession such liquors for sale without a license. Possession for unlawful sale, that is, without a license, would constitute possession for an unlawful use under the statute.

The plaintiff contends however that it is a private club and, as such, may sell liquor to its members and guests, without a license, if the liquor is legally acquired. The statutes contain no such exception. Therefore, we need not determine whether plaintiff operates as a private club for, regardless of the character, form, or name of the umbrella raised to protect the sale, if the sale of any alcoholic liquors is made by *any one* other than under a license from the State, the sale is unlawful under the provisions of Section 4-91.

The case of *State ex rel. Columbia Club v. McMaster,* 35 S. C. 1, 14 S. E. 290, cited by plaintiff, is clearly not controlling here. While there are other distinguishing features, it is sufficient to point out that there the court found the transactions between the purely social club and its members did not constitute a sale of alcoholic liquors within the meaning of the statutes involved. Here the record is undisputed that the plaintiff was, in every sense of the word, selling alcoholic liquors to its members and guests.

The plaintiff seeks to interpret the meaning of the present statutes by tracing and analyzing their past history. Such historical excursion is interesting but has no bearing on the interpretation of Section 4-91. For regardless of its genesis or subsequent history, the wording of this statute is now clear, plain and unambiguous, and it is unnecessary and improper to recur to the original statutes for the purpose of ascertaining its meaning. *State v. Conally,* 227 S. C. 507, 88 S. E. (2d) 591.

It is undisputed that the plaintiff had in its possession alcoholic liquors *solely* for the purpose of sale and was selling such liquors to its members and guests without a license from the State to do so. Such activities constituted a clear violation of the provisions of Section 4-91 and the lower court was in error in not so holding.

Article 8, Section 11 of the South Carolina Constitution provides, in part, that "[t]he General Assembly may license persons or corporations to manufacture and sell and retail alcoholic liquors or beverages within the State". The plaintiff contends that the foregoing provisions are a limitation upon the powers of the General Assembly and that the failure to list *possession* as one of the subjects upon which the General Assembly might legislate with regard to alcoholic liquors operates to limit its power to regulate possession of legally acquired liquors, except where related or incidental to the control of the "Manfacture and sale and retail" of alcoholic beverages. The plaintiff further contends that the statutes regulating possession of lawfully acquired

alcoholic liquors are arbitrary, unduly vague, and constitute a deprivation of private property in violation of the Fourteenth Amendment to the United States Constitution and Article 1, Section 5, of the South Carolina Constitution.

We have construed Section 4-91 as prohibiting possession of alcoholic liquors for sale without a license. It therefore constitutes legislation by the General Assembly relative to a subject specifically mentioned in Article 8, Section 11, *supra*, that is, the sale and retail of alcoholic liquors. Since this is true, we need not further pursue the constitutional questions raised; for the plaintiff properly concedes that "a law specifically prohibiting resales, or sales by the drink of lawfully acquired alcoholic beverages and barring its 'possession' in establishments where such sales occur would seem to be clearly within" the power of the General Assembly.

The judgment of the lower court is accordingly reversed.

Moss, C. J., and BRAILSFORD and LITTLEJOHN, JJ., concur.

BUSSEY, J., did not participate.